IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAWN COOPER, | CIVIL NO. 03-00595 SPK/LEK |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | |
| KEVIN W. DIEFFENBACH, M.D. and DOES 1-10, | |
| Defendants. | |

MEMORANDUM IN SUPPORT OF MOTION

I.   INTRODUCTION

Plaintiff Dawn Cooper ("Dawn" or "Plaintiff") seeks a ruling on the use of the expert opinions of Defendant Kevin W. Dieffenbach, M.D.'s expert witness, F. Don Parsa, M.D. ("Dr. Parsa"), on the issue of informed consent at trial.

Plaintiff's Motion should be granted because Dr. Parsa was designated as a testifying witness pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure ("FRCP") and his report was provided to Plaintiff pursuant to FRCP Rule 26(a)(2)(B).  The patient oriented standard applicable in Hawaii in informed consent cases permits Plaintiff to establish the materiality of the risks through Defendant's expert testimony.  Defendant's expert witness, Dr.

Parsa provided his opinions on the issue of informed consent through his written report and extensively through deposition testimony. Pursuant to Hawaii law, Plaintiff is entitled to use Dr. Parsa's expert opinions at trial.

The Court is well-aware of the underlying facts of the instant case and those facts will not be repeated here. Dawn's claims arise from a surgical breast reduction procedure performed on her by defendant Kevin D. Dieffenbach, M.D. ("Dr. Dieffenbach" or "Defendant") on July 16, 2001.

On April 14, 2005, Dr. Dieffenbach identified F. Don Parsa, M.D. ("Dr. Parsa") as his expert witness pursuant to FRCP Rule 26(b)(4)(A) and provided Dr. Parsa's report pursuant to FRCP Rule 26(b)(4)(B). See Dr. Parsa's expert report dated April 7, 2005 and Curriculum Vitae, including the April 14, 2005 letter from Defendant's counsel to Messrs. Edmunds and Helper, true and correct copies of which are collectively attached as Exhibit A hereto.

On May 6, 2005, Dr. Parsa was deposed by Dawn's counsel.[1] A true and correct copy of excerpts of the transcript of the Deposition of Don Parsa taken on May 6, 2005 is attached as Exhibit B hereto. Dr. Parsa's deposition has yet to be completed. During this deposition, Dr. Parsa testified extensively on the

---

[1] Plaintiff compensated Dr. Parsa for the entire five hours spent in this May 6, 2005 deposition in the total amount of $1,820.00. See Declaration of Joy S. Omonaka, attached hereto and incorporated herein by reference.

materiality of the disclosures required to meet the standard of care for informed consent. He concluded by opining, <u>inter</u> <u>alia</u>, that:

> Weight was an important risk factor. Surgeons should disclose to their patients important risk factors before surgery. A surgeon who meets the standard of care for disclosure would, therefore, have disclosed weight as a risk factor to Ms. Cooper before operating.
>
> Smoking is also an important risk factor in Ms. Cooper's case. And her history of smoking was an important risk factor before the surgery. Important risk factors should be disclosed by the surgeon to the patient before operating. The risk factor of smoking should have been disclosed to Ms. Cooper before Dr. Dieffenbach operated.

Exhibit B at pp. 197-199.

Plaintiff seeks to use Dr. Parsa's opinions, including those outlined above, to establish the requisite foundation regarding materiality of the risks, including, but not limited to, his opinions regarding the co-morbid factors which increased her risks.

II.   <u>ARGUMENT</u>

Under the patient standard, expert testimony is not critical to demonstrate the amount of information a patient needs in order to make an intelligent decision. <u>Barcai v. Betwee</u>, 98 Hawai'i 470, 484, 50 P.3d 946 (2002). However, expert testimony will ordinarily be required to establish the

"materiality" of the risks, i.e., "the nature of risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, and the nature of available alternatives to treatment." <u>Carr v. Strode</u>, 79 Hawai'i 475, 486, 904 P.2d 489 (1995). (Citations omitted). The plaintiff, however, need not necessarily provide such expert testimony; <u>the requisite foundation can be established by the defendant's expert testimony</u>. <u>Id</u>. at 487 (emphasis added).

Pursuant to FRCP Rule 26, Dr. Dieffenbach identified Dr. Parsa as his expert witness and provided a copy of Dr. Parsa's report to Plaintiff. Dr. Parsa was deposed at length on the issue of informed consent.

In his written report, Dr. Parsa stated:

> Ms. Cooper was provided an informed consent that is quite complete without neglecting any aspect of the procedure and therefore it meets the standard of care.

<u>See</u> Exhibit A hereto.

However, at deposition, Dr. Parsa testified, <u>inter alia</u>, as follows:

1) Dawn's risk of wound healing problems based on the amount of breast tissue to be removed, in light of her weight and history of smoking would have "fallen somewhere fifty-fifty" and she was "taking a major risk" by undergoing the surgery. Exhibit B at p. 52.

2)     In observations over a period of many years, he has seen 30% of obese patients and 70% of patients with a history of smoking present with wound healing complications.  Id. at p. 72.

3)     Primarily smoking, and secondarily, her obesity, may have contributed or even caused Dawn's complications.  Id. at pp. 74-76.

4)     To a reasonable medical probability, Dawn's obesity to some extent caused or contributed to her wound healing complications.  Id. at p. 76.

5)     Females seeking reduction mammoplasty who have large and ptotic breasts are at risk of questionable parenchymal blood flow and increased risk of fat necrosis if they are smokers.  Id. at p. 124

6)     Dr. Dieffenbach used the central pedicle technique in order to preserve the nipple-areolar complex ("NAC").  Exhibit F at p. 46.  The central pedicle technique involves the elevation of the breast flaps.  It is in the elevation of the flaps that the greater risk to the interruption of the blood supply is encountered.  Id. at pp. 128-129.

7)     One alternative "ultra-safe" procedure was the excision of a large portion of the breast, inferiorly and medially with a free NAC graft.  Id. at p. 128

8)     Weight was an important risk factor.  Surgeons should disclose to their patients important risk factors before surgery.  A surgeon who meets the standard of care for disclosure would, therefore, have disclosed weight as a risk factor to Ms. Cooper before operating.  Id. at pp. 197-198.

9)     Smoking is also an important risk factor in Ms. Cooper's case.  And her history of smoking was an important risk factor before the surgery.  Important risk factors should be disclosed by the

surgeon to the patient before operating. The risk factor of smoking should have been disclosed to Ms. Cooper before Dr. Dieffenbach operated. Id. at pp. 198-199.

As Dr. Parsa testified at length in deposition, Dawn's weight and history of smoking were <u>important risk factors</u> and therefore Dr. Dieffenbach <u>should have disclosed</u> these risks to Dawn before he operated on her.

IV.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff Dawn Cooper respectfully requests that the Court allow her to use the opinions and testimony of Defendant Kevin W. Dieffenbach's expert witness, F. Don Parsa, M.D., at trial.

DATED: Honolulu, Hawai`i, July 12, 2006.

        /s/ Joy S. Omonaka
JOHN S. EDMUNDS
JOY S. OMONAKA

Attorneys for Plaintiff