EDMUNDS &VERGA
Attorneys at Law, A Law Corporation

JOHN S. EDMUNDS    734-0
jedmunds@ev-law.com
JOY S. OMONAKA    5709-0
jomonaka@ev-law.com
841 Bishop Street, Suite 2104
Honolulu, Hawai`i 96813
Telephone: (808) 524-2000
Facsimile: (808) 528-3585

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAWN COOPER, | CIVIL NO. 03-00595 SPK/LEK |
| Plaintiff, | PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF |
| vs. | MOTION RE USE OF DEFENSE EXPERT'S TESTIMONY ON |
| KEVIN W. DIEFFENBACH, M.D. and DOES 1-10, | INFORMED CONSENT; EXHIBITS C-E; DECLARATION OF JOY S. OMONAKA; AND CERTIFICATE |
| Defendants. | OF SERVICE |
| | DATE: August 28, 2006 |
| | TIME: 1:00 p.m. |
| | JUDGE: Mag. Leslie E. Kobayashi |
| | Trial Date: December 5, 2006 |

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION RE USE OF DEFENSE EXPERT'S TESTIMONY ON INFORMED CONSENT

Plaintiff submits this reply memorandum in support of her Motion Re the Use of Defense Expert's Testimony on Informed Consent filed on July 12, 2006 ("Motion").

I.  INTRODUCTION

Plaintiff initially identified Roger L. Greenberg, M.D. ("Dr. Greenberg") as her expert witness on December 15, 2004. On April 14, 2005, Defendant Kevin W. Dieffenbach, M.D. ("Defendant") disclosed F. Don Parsa, M.D. ("Dr. Parsa") as his expert witness and provided the parties with a copy of Dr. Parsa's report and Curriculum Vitae ("CV").[1] On May 6, 2005, Dr. Parsa was deposed by consent of Defendant for a period of less than five hours. Following this deposition, Plaintiff advised Defendant that she intended to use Dr. Parsa's deposition testimony at trial. See Letter from John S. Edmunds to Jeffrey S. Portnoy dated June 17, 2005, a true and correct copy of which is attached as Exhibit C hereto.

In response to Plaintiff's June 17, 2005 letter, Defendant declined to respond and instead deferred argument for motions in limine or at trial. See Letter

---

[1] Attached collectively as Exhibit A to Plaintiff's Motion.

2

from Jeffrey S. Portnoy to John S. Edmunds dated June 20, 2005, a true and correct copy of which is attached as Exhibit D hereto.

On July 26, 2005, Plaintiff notified Defendant that she would not be calling Dr. Greenberg on any issue on her case in chief. However, she then notified Defendant of her intention to introduce the deposition testimony of Dr. Parsa in her case in chief at trial. See Email message from John Edmunds to Jeff Portnoy dated July 26, 2005, a true and correct copy of which is attached as Exhibit E hereto. Defendant subsequently withdrew Dr. Parsa as his testifying expert witness.

II.   ARGUMENT

    A.   Once An Expert Witness Is Disclosed, Access To That Witness Should Be Allowed and the Adversary Should Be Allowed To Produce That Expert At Trial

Defendant disclosed Dr. Parsa as his expert witness and provided Plaintiff with his written report pursuant to the mandates of Rule 26(a)(2) of the Federal Rules of Civil Procedure ("FRCP"). Plaintiffs then deposed Dr. Parsa and obtained expert testimony on the issue of informed consent.

Despite the identification of Dr. Parsa as Defendant's testifying witness and the consent to Plaintiff's taking of his deposition regarding his expert opinion on the issue of informed consent, Defendant is now seeking to withdraw

Dr. Parsa as his witness and to preclude Plaintiff from using Dr. Parsa's opinion merely because Defendant will not call Dr. Parsa as his expert witness. Defendant claims that the use of Dr. Parsa's testimony solely by Plaintiff would result in unfair prejudice to Defendant.

Pursuant to the Federal Rules of Civil Procedure, once a witness has been designated as expected to testify at trial, there may be situations when the witness should be permitted to testify for the opposing party. Peterson v. Willie, et al., 81 F.3d 1033, 1037-38 (11th Cir.1996). One of the primary concerns of any trial court is the desire for probative information and the search for truth. Agron v. Trustees of Columbia University in the City of New York, 176 F.R.D. 445 (S.D.N.Y. 1997). Naturally, such a truth-finding mission favors the admission of testimony by an expert who could assist the trier of fact in determining complex issues. Id. [Citations omitted].

Courts have applied three standards to the question of whether a party should be able to use at trial an expert hired, but then withdrawn, by the opposing party:

> Moving from least to most permissive, the first of those standards is an "exceptional circumstances" standard founded on Fed.R.Civ.P. 26(b)(4)(B). The second standard is articulated in the most recent of the decisions to discuss the question, Peterson v. Willie, 81 F.3d 1033

> (11th Cir. 1996) ... . Peterson suggests a "discretionary" or "balancing" standard, involving a balancing of the interests of the party and the court against the potential for prejudice to the party who hired the expert, but who does not wish to use that expert at trial. The third, and most permissive standard, is based upon a few cases finding an "entitlement" to call an opposing party's expert under certain circumstances, despite the opposing party's desire *not* to have the expert testify.

House v. Combined Insurance Company of America, 178 F.R.D. 236, 240 (N.D. Iowa 1996).

After detailed consideration of cases adopting each of the three standards, the House court found the "balancing" test most appropriate in the circumstance where a party has first designated an expert as a testifying witness and then withdrawn that designation:

> The House court concluded that the proper standard in these circumstances is a "discretionary" standard, where the trial court's discretion is guided by a balancing of probative value against prejudice under Fed.R.Evid. 403. Such a standard takes into account the interests Rule 26 was designed to protect and those of the party who originally hired the expert, to the extent that party has not waived such an interest ... as well as taking into account the peculiar prejudice that could arise if the jury is informed that an expert presented by one party was hired, then dropped, by the other party. See, e.g., Peterson, 81 F.3d at 1037 (discussing this prejudice). It also recognizes the court's interest in the proper resolution of issues, Rubel, 160 F.R.D. at 460 (identifying the court's interest as "an informed resolution of plaintiff's claim"); Crowe [v. Nivison], 145

> F.R.D. at 658 (identifying the court's interest and that of society as a whole as "arriving at the truth of the matter"), which is more objective than the plaintiff's interest in proving the truth of his or her claims, and the interests of the party seeking the testimony in presenting to the jury the results of an intrusive examination where those results are favorable to the party who suffered the invasion of privacy.
>
> FN7. Indeed, the court believes that this standard should be applicable whenever a Rule 26(b)(4)(A) designation has occurred, but that the factor of a Rule 35 examination of the opposing party weighs particularly heavily in favor of the examined party's interests in all facts relevant to the examined party's claims coming to light.

House, supra, at 245, 246 [some citations omitted].

The House court recognized:

> a tremendous potential for prejudice to Combined simply in the revelation to the jury that Combined originally hired, designated, then dropped Dr. Taylor as an expert after his examination of the plaintiff once Dr. Taylor's opinions were actually known.

Id. at 248.

Applying the balancing test, the court permitted the plaintiff to call Dr. Taylor as a witness at trial, but ordered that neither party disclose to the jury how the expert became involved in the case. Id. The court further allowed the

plaintiff to take an additional pretrial deposition of the expert to preserve his testimony in the event he should become unavailable at the time of trial.

House makes it clear that the mere withdrawal of a FRCP Rule 26(b)(4)(A) witness intended to be called at trial does not convert that witness into a FRCP Rule 26(b)(4)(B) expert retained in preparation for trial but who is not expected to be called as a witness at trial.

Subsequent cases have approved the "balancing test" of House. In White v. Vanderbilt University, 21 S.W.3d 215 (Tenn.App. 1999), a medical malpractice case, the defendant designated an expert as a testifying witness and then later withdrew that designation. The plaintiff sought to use the defendant's expert's deposition testimony at trial. The trial court excluded the testimony and the appellate court reversed under the rationale of House:

> Once an expert has been deposed, the limitation on the discovery of consulting experts has little or no application, and the expert is recognized as presenting part of the common body of discoverable and generally admissible information and testimony available to all parties. See House v. Combined Ins. Co. of Am., 168 F.R.D. at 245.

White, supra, at 224, 225 [some citations omitted, emphasis added].

In Miller v. Marymount Medical Center, 125 S.W.3d 274 (Ky. App. 2001), the court adopted the balancing test of House, not only admitting the

7

deposition testimony of the opposing party's expert, but permitting the expert to be identified as having been retained and compensated by that party:

> In the final analysis, "[a] trial is essentially a search for the truth," Cogdell v. Brown, 220 N.J.Super. 330, 531 A.2d 1379, 1381 (Law Div.1987), and the rules of evidence "shall be construed to ... the end that the truth may be ascertained and proceedings justly determined." Thus, we conclude that evidence tending to prove the objectivity of an expert witness is not inadmissible per se either because of its prejudicial effect or because it tends to bolster the witness's credibility. "Particularly in medical malpractice cases, the credibility of experts is a paramount issue. Whether an expert is a 'hired gun' or one whose opinions have greater foundations of objectivity is an issue to be litigated by counsel and considered by the jury." Cogdell, supra, at 1382.

Miller, supra, at p.283-284.

By declaring that an expert witness will be produced at trial and providing the expert's identity and opinion to another party, as required by court rules, the original proponent has waived his claim that the information is privileged. Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286, 301, 895 A.2d 405, 413 (2006). Thus, we hold that access to the testifying witness is allowed and the adversary may produce a willing expert at trial. Id. Fitzgerald involved an employment discrimination dispute wherein plaintiff originally retained a psychiatrist, Dr. Nadel, who had been scheduled to testify at trial on her behalf.

Id. at 296. Dr. Nadel modified his initial diagnosis after reviewing information provided during discovery. Id. At trial, although plaintiff did not call Dr. Nadel to testify, defendant sought to call Dr. Nadel. Based on prior case law, the trial court did not allow Dr. Nadel to testify and a verdict was returned in favor of plaintiff. Id. at 296-297. Defendant appealed. On appeal, the New Jersey appellate court reversed the trial court's decision and held that Dr. Nadel, plaintiff's expert, should have been allowed to testify on defendant's behalf because he was identified as a testifying witness and provided his expert opinion to defendant. Fitzgerald, supra, 186 N.J. 286 at 301.

The New Jersey court's opinion in Fitzgerald is in alignment with a majority of courts that have faced this issue. The rules designed to protect consulting experts do not prevent a party from calling an adversary's expert when that expert has been designated a "testifying expert," even without a showing of exigent circumstances.

> Our conclusion aligns with that reached by the majority of courts that have faced the issue before us. All have determined that discovery rules designed to protect consulting experts do not prevent a party from calling an adversary's expert when that expert has been designated a "testifying expert," even without a showing of exigent circumstances. See, e.g., Peterson v. Willie, 81 F.3d 1033, 1037-38 (11th Cir.1996) (defendant permitted to call plaintiff's testifying medical expert); Agron v. Trs.

>of Columbia Univ., 176 F.R.D. 445, 449 (S.D.N.Y.1997) (defendant permitted to call plaintiff's testifying psychiatric expert); House v. Combined Ins. Co. of Am., 168 F.R.D. 236, 246-47 (D.Iowa 1996) (plaintiff permitted to use defendant's testifying psychiatrist); Crowe v. Nivison, 145 F.R.D. 657, 657-58 (D.Md.1993) (plaintiff permitted to call defendant's testifying orthopedist); Loiseau v. Bd. of Tax Review, 46 Conn.App. 338, 699 A.2d 265, 268 (1997) (plaintiff permitted to call defendant's testifying appraisal expert); Broward County v. Cento, 611 So.2d 1339, 1339-40 (Fla.Dist.Ct.App.1993) (plaintiff permitted to call defendant's testifying medical expert).

Fitzgerald, supra, at 302.

In this case, Defendant identified Dr. Parsa as his testifying expert witness and provided his report to Plaintiff in preparation for trial pursuant to Court rules. Dr. Parsa was deposed with the consent of Defendant for purposes of trial preparation. When Plaintiff advised Defendant that she was withdrawing her expert designation of Dr. Greenberg and intended to use Dr. Parsa's deposition testimony as expert testimony on materiality, Defendant notified Plaintiff that he intended to withdraw his expert designation of Dr. Parsa as his testifying witness for trial.

    B.    The Probative Value of Dr. Parsa's Opinions Is Not Substantially Outweighed By the Danger of Unfair Prejudice

Dr. Parsa's opinions are highly probative for the following reasons:

1)  The Court's desire for probative information and the search for truth favoring the admission of testimony by an expert who could assist the trier of fact in determining complex issues. See Agron, supra.

2)  Lay jurors do not normally possess such information, it must be made available to them by an expert in order that they can determine the factual question whether a reasonable person would have wanted to consider the purportedly withheld information before consenting to the treatment. See Carr v. Strode, 79 Hawai'i 475, 486, 904 P.2d 489 (1995).

3)  Under Hawaii law, in informed consent cases, expert testimony will ordinarily be required to establish the "materiality" of the risks, however, the plaintiff need not necessarily provide such expert testimony; the requisite foundation can be established by the defendant's expert testimony. See Carr, supra at 487.

4)  In reliance on Hawaii case law as cited above and the opinions regarding materiality of the risk as testified to in deposition by Dr. Parsa, Plaintiff withdrew her expert designation of Dr. Greenberg. The deadline for Plaintiff to disclose additional expert witnesses has passed. There will be no other expert testimony on informed consent at trial.

5)  Dr. Parsa is a credible expert witness who is highly qualified to provide his opinion on the materiality of the risks in this informed consent case. See Exhibit A to the Motion.

Despite the case law in the majority of jurisdictions and the overwhelming facts supporting the probative value of Dr. Parsa's testimony, Defendant argues that the probative value is outweighed by the severely prejudicial effect of allowing Dr. Parsa to testify solely for Plaintiff. In support of

his claim, Defendant relies on Saewitz v. Lexington Ins. Co., 133 Fed. Appx. 695 (11th Cir.1005), however, the facts in Saewitz can be clearly distinguished from the case at hand.

In Saewitz, plaintiffs designated Gerald DeMarco as their expert pertaining to the damage to the first floor and structure of their home. DeMarco prepared an expert report which was provided to defendant and was later deposed. Id. at 697. As the litigation progressed, plaintiffs abandoned the claim for damages related to the first floor of their home, withdrew DeMarco as an expert witness, and moved to exclude DeMarco's testimony and expert report at trial if defendant sought to introduce that as evidence. The district court ruled that, although DeMarco's testimony and report were relevant to both abandoned and live claims, allowing defendant to call DeMarco or rely on his expert report would result in unfair prejudice to the Saewitzes. Id. at 697-698. The appellate court affirmed the district court's decision citing two reasons in support of its decision: 1) DeMarco's testimony was cumulative (because the trial court allowed two other witnesses to present testimony substantially similar to that of DeMarco); and 2) any further testimony which could have been elicited from DeMarco would have likely supported the fraud and concealment theory (which theory the court specifically prohibited defendant from pursuing). Id. at 700.

Since Dr. Parsa's testimony is not cumulative and his opinions regarding the materiality of risks for purposes of Plaintiff's informed consent claim are not prohibited but instead clearly permitted under Hawaii law, no unfair prejudice will result from Plaintiff's use of his opinions in her case in chief.

C.  It Is Premature For Defendant To Contend That Dr. Parsa's Deposition Testimony Is Hearsay

Once an expert is designated, the expert is recognized as presenting part of the common body of discoverable, and generally admissible, information and testimony available to all parties. House, supra, at 245 [emphasis added].

> The practical effect of a Rule 26 designation of an expert is to make an expert available for deposition by the opposing party, ... and such a deposition preserves the testimony of the expert, should the expert later become unavailable, or provides a basis for impeachment, should the expert's opinion offered at trial differ.

Id.

Plaintiff merely intends to offer Dr. Parsa's opinion in her case in chief, whether through live testimony or by offering excerpts of his deposition testimony in lieu of live testimony pursuant to applicable Court rules. If Dr. Parsa is called as a live witness, Plaintiff may seek to use Dr. Parsa's deposition transcript in the event it is necessary to impeach his trial testimony. If Dr. Parsa's attendance at trial cannot be procured through subpoena, Plaintiff will seek to

introduce excerpts of his deposition testimony in lieu of live testimony. Because the parties have yet to submit their Final Witness Lists, it is premature for this Court to consider Defendant's hearsay objection until facts surrounding Dr. Parsa's ability or inability to testify live at trial materialize.

DATED: Honolulu, Hawai'i, August 17, 2006.

/s/ Joy S. Omonaka
JOHN S. EDMUNDS
JOY S. OMONAKA

Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was duly served on the following parties at their last known address as set forth below, on August 17, 2006:

|  MAILED | HAND DELIVERED | |
|---|---|---|
| [ X ] | [   ] | JEFFREY S. PORTNOY, ESQ.<br>Cades Schutte<br>1000 Bishop Street, Suite 1200<br>Honolulu, HI 96813<br><br>Attorney for Defendant<br>KEVIN W. DIEFFENBACH, M.D. |

DATED: Honolulu, Hawai`i, August 17, 2006.

/s/ Joy S. Omonaka
JOHN S. EDMUNDS
JOY S. OMONAKA

Attorneys for Plaintiff