EDMUNDS & VERGA
Attorneys at Law, A Law Corporation

JOHN S. EDMUNDS         734-0
jedmunds@ev-law.com
RONALD J. VERGA         2638-0
rverga@ev-law.com
JOY S. OMONAKA          5709-0
jomonaka@ev-law.com
841 Bishop Street, Suite 2104
Honolulu, Hawai`i 96813
Telephone:   (808) 524-2000
Facsimile:    (808) 528-3585

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAWN COOPER, | CIVIL NO. 03-00595 SPK/LEK |
| Plaintiff, | PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER NOTICE OF APPEAL TO THE DISTRICT COURT PURSUANT TO L.R. RULE 74.1 FROM THE ORDER OF MAGISTRATE-JUDGE KOBAYASHI DENYING PLAINTIFF'S MOTION RE USE OF DEFENSE EXPERT'S TESTIMONY ON INFORMED CONSENT; DECLARATION OF JOHN S. EDMUNDS; CERTIFICATE OF SERVICE |
| vs. | |
| KEVIN W. DIEFFENBACH, M.D. and DOES 1-10, | |
| Defendants. | |
| | TRIAL DATE:  March 13, 2007 |

PLAINTIFF'S REPLY MEMORANDUM SUPPORT OF HER
NOTICE OF APPEAL TO THE DISTRICT COURT PURSUANT TO
L.R. RULE 74.1 FROM THE ORDER OF MAGISTRATE-JUDGE
KOBAYASHI DENYING PLAINTIFF'S MOTION RE USE OF
DEFENSE EXPERT'S TESTIMONY ON INFORMED CONSENT

Plaintiff submits this Reply Memorandum In Support of Her Notice of Appeal to the District Court Pursuant to L.R. Rule 74.1 From the Order of Magistrate-Judge Kobayashi Denying Plaintiff's Motion re Use of Defense Expert's Testimony on Informed Consent ("Reply Memorandum").  Leave was granted by this Court by Order Granting Plaintiff's Ex Parte Application For Leave To File Reply Memorandum entered on November 21, 2006.

I.  ALTHOUGH A MATTER OF FIRST IMPRESSION IN THE NINTH CIRCUIT, THE MAGISTRATE-JUDGE'S ORDER IS CLEARLY ERRONEOUS.

Plaintiff agrees with Magistrate-Judge Kobayashi's statement in her Order that the Ninth Circuit has not addressed this issue.  See Order Denying Plaintiff's Motion Re Use of Defense Expert's Testimony on Informed Consent ("Order") at 10.  However, Plaintiff believes that the Magistrate-Judge relied on inapposite lower-court cases in this Circuit to reach a clearly erroneous decision.

The situation in which one party attempts to "de-designate" an expert as a witness who will testify at trial, and the opposing party then seeks to call that expert as a trial witness, occurs with some frequency, and the courts have addressed the consequences that follow, although there is no binding Ninth Circuit rule.  As the Magistrate-Judge acknowledged, courts have generally applied one of three different standards in deciding the issue.  These standards are an "exceptional circumstances" requirement based on FRCP 26(b)(4); a balancing standard in which the Court weighs the interests of the party and the court against the potential for prejudice to the party

who initially hired the expert, but now does not wish to use the expert at trial, and an "entitlement" standard permitting the calling of the witness under certain circumstances, despite the opposing party's desire not to have him testify. Order at 10-11, citing <u>House v. Combined Ins. Co. of Am.</u>, 168 F.R.D. 236, 240 (N.D. Iowa 1996).

For a series of reasons, this case belongs, at the very least, among those to which the "balancing" test should be applied; when that test is applied, the balance clearly weighs in favor of the admission of the testimony of Dr. Parsa, the "de-designated" expert, at trial.

A brief discussion of the Magistrate-Judge's Order and the policies applicable to witness disclosure shows why this is the case. First, the Magistrate began her analysis, as many of the cases do, by analogizing the position here to that under F.R.C.P. 26(b)(4)(B), which governs discovery from an opposing party's expert. But it is an error to apply that Rule to restrict the testimony of witnesses at trial. Rule 26(b)(4) is a discovery rule, intended to limit what a party may discover, through deposition, from his opponent's experts. It is an error to use analogies from that discovery rule to restrict the admission at trial of evidence which could aid the jury. Rule 26(b)(4)(B) is a subsection of Rule 26(b), which is entitled "Discovery Scope and Limits," and Rule 26(b) is itself a subsection of Rule 26, which is entitled "General Provisions Governing Discovery; Duty of Disclosure." Thus Rule 26 governs the discovery and disclosure process, but does not govern the conduct of the trial itself. More precisely, as some

courts have noted, Rule 26(b)(4)(B)'s discovery provisions say nothing about whether an expert's testimony is admissible at trial.[1]  As the court in Agron wrote:

> The rule [26(b)(4)(B)] is intended to allow litigants to consult experts in order to evaluate a claim "without fear that every consultation with an expert may yield grist for the adversary's mill."  *Rubel v. Eli Lilly and Co.*, 160 F.R.D.458, 460 (S.D.N.Y. 1995).  This policy, however, has "little or no application" where the party has allowed discovery of its expert without objection.

176 F.R.D. at 449.

Because Rule 26 does not govern the admission of evidence at trials and is thus inapplicable here, the proper rule for decision is the basic one:  given that the testimony is concededly relevant[2], it, like all relevant evidence, should be admitted at trial unless some specific provision of the Constitution, statutes, or rules of evidence or procedure provide otherwise.  No such rule provides otherwise here, and a rule governing discovery could not do so, in any event.[3]

---

[1]  Ferguson v. Michael Foods, Inc., 189 F.R.D. 408, 409 (D. Minn. 1999); Agron v. Trustees of Columbia University, 176 F.R.D. 445, 449 (S.D.N.Y. 1997)

[2]  By initially disclosing Dr. Parsa as an expert witness likely to be called at trial, Defendant Dieffenbach advised the parties that he "ha[d] scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue."  F.R.E. 702; F.R.C.P. 26(a)(2)(A).  That is, the disclosure of an expert as a potential trial witness is an inherent declaration that the expert can aid the jury in its determination of truth on one or more relevant factual issues, i.e., that his testimony is relevant to issues in the case.  No amount of subsequent "de-disclosure" of the witness as a testifying expert can remove or defeat the relevance of his potential testimony.

[3]  See Agron, supra; Rubel, supra; White v. Vanderbilt University, 21 S.W.3d 215 (Tenn. App. 1999, rev. den. 2000) (Rule 26 inapplicable to the question of admissibility at trial; absent discovery abuse, procedural and evidence rules control).

3

Once the expert is declared to be a potentially valuable source of relevant information, the jury should be allowed to consider the information he can provide, even if one of the attorneys decides that he is no longer pleased with, or no longer requires, the expert's information. At a minimum, the burden must be placed on the party seeking to foreclose from the jury a source of information that he himself declared to be potentially valuable to point to some provision of the Federal Rules of Evidence or Civil Procedure to support that restriction. There is no such rule, and the only other support Defendant Dieffenbach argues is the prejudice resulting from Plaintiff's use of "his" expert.

Some courts protect a party's "investment" in retaining, paying and working with an expert witness by ruling, as the Magistrate-Judge did, that once a party de-discloses that expert as a trial witness, he is transformed into a consulting expert and may not be called to testify at trial by the opposing party. This is a further faulty analogy to the rules governing discovery. F.R.C.P. 26(b)(4)(B), by limiting the <u>discovery</u> available from a witness retained in anticipating of litigation who is not expected to testify at trial, effectively prevents a party's "freeloading" on his opponent's trial preparation. This reasonable aspect of the Rule – an important one, but not its central purpose – is essentially valueless when a party has voluntarily de-disclosed his witness, for at that point the party has himself abandoned his investment in the witness, or has at least written it off as a "sunk cost". While protecting a party's investment in his expert has value at the discovery stage, clearly by the time of trial the goals of discovering the truth and assisting the trier of fact in understanding the evidence should take precedence.

In a detailed article, "'Red Rover, Red Rover, Send that Expert Right Over': Clearing the Way for Parties to Introduce the Testimony of their Opponents' Expert Witnesses", 55 S.M.U.L.Rev. 1427 (2002), Professor Stephen Easton analyzes the cases on the issue, and concludes that:

> Perhaps an already deposed expert presents the strongest case for admission of Red Rover testimony. ... <u>An opposing party that has secured deposition testimony supporting that party's position on a necessary element of the case might have the best argument of all, because prohibiting it from using that deposition testimony might prevent it from making its case at trial, particularly if the de-disclosure occurred during, or shortly before, trial.</u> In addition, the introduction of a deposition at trial presents no risk of disclosure of previously confidential information, and even live trial testimony from a previously deposed witness often presents little such risk.

<u>Id.</u> at 55 S.M.U. L. Rev. 1479, n. 246  [Emphasis added].

The author goes on to suggest that those "who are more concerned than [he] about a party's investment in a witness, but at least somewhat persuaded by concerns for fairness to the opposing party, might propose allowing de-disclosure up until the deposition of an expert, as some courts have suggested," citing <u>White v. Vanderbilt University</u>, <u>supra</u> (citing other courts that have allowed de-disclosure "prior to the witness's deposition"); <u>Tom L. Scott, Inc. v. McIlhany</u>, 798 S.W.2d 556 (Tex. 1990) (mandamus proceeding reversing order prohibiting expert depositions in case where experts, previously designated as expected to testify at trial, were "assigned" to settling party in settlement agreement, who then redesignated them as consultants only; held, redesignation "an offensive and unacceptable use of discovery mechanisms intended to defeat the salutary objectives of discovery.")

Cf. Agron v. Trustees of Columbia University, supra, where, although the deposition of the withdrawn expert had not been taken, the plaintiff had voluntarily and without objection disclosed the expert's opinion and provided a copy of his report to the defendant in discovery. In its decision on a motion in limine to determine the admissibility at trial of the withdrawn expert's testimony on behalf of the Defendant, the court rejected both the contention that the expert should be treated as a non-testifying consultant and that an "exceptional circumstances" standard analogous to that of FRCP 26(b)(4) should apply, finding the testimony admissible under a balancing test and denying the motion in limine.

Plaintiff's position here is exactly that postulated by the "Red Rover" author: She has been unable to locate expert testimony required to establish an essential element of her claim and the deadline to disclose such witnesses has passed; she has secured deposition testimony from the opposing expert supporting that position; the de-disclosure of the expert occurred only after that deposition testimony and shortly before trial.

While Ninth Circuit authority on the precise issue here is lacking, Plaintiff directs the Court's attention to United States v. Meyer, 398 F. 2d 66, 76 (9th Cir. 1968), a condemnation case where the Government resisted the landowner's attempts to obtain discovery from the Government's appraisers, where the Court wrote, "It would be intolerable to allow a party to suppress unfavorable evidence by deciding not to use a retained expert at trial." In the same way,

> One of the primary concerns of any trial court is the desire
> for probative information and the search for truth. Naturally,
> such a truth-finding mission favors the admission of

6

>testimony by an expert who could assist the trier of fact in determining complex issues.

Agron at 176 F.R.D. 450.

Both the desire for probative information and the prejudice to Defendant which will result if she is precluded from bringing forward evidence on an essential element of her case favor permitting the trial testimony of Dr. Parsa here.

II. THE PHOTOGRAPHS OF MS. COOPER'S CONDITION WERE BEFORE THE MAGISTRATE-JUDGE.

The photographs of Ms. Cooper were submitted to Magistrate-Judge Kobayashi with Plaintiff's Confidential Settlement Conference Statement on June 6, 2005 and were the subject of a discussion between myself, defense counsel Jeffrey R. Portnoy and Magistrate-Judge Leslie Kobayashi at the settlement conference held on or about June 8, 2005.  See Declaration of John S. Edmunds ("Edmunds Declaration") attached hereto and incorporated herein by reference.  For Defendant to claim that these photographs were not before Magistrate Kobayashi is irresponsible.

III. CONCLUSION

For the foregoing reasons, counsel respectfully requests that the Court consider her Notice of Appeal to the District Court Pursuant to L.R. Rule 74.1 and set aside the Order of Magistrate-Judge Kobayashi Denying Plaintiff's Motion re Use of Defense Expert's Testimony on Informed Consent.  Counsel also respectfully requests this Court consider hearing oral argument in this matter.

DATED:  Honolulu, Hawaii, December 7, 2006.

/s/ JOHN S. EDMUNDS
John S. Edmunds
Ronald J. Verga
Joy S. Omonaka

Attorneys for Plaintiff

---

Cooper v. Dieffenbach, et al.
Civil No. 03-00595 SPK/LEK

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER NOTICE OF APPEAL TO THE DISTRICT COURT PURSUANT TO L.R. RULE 74.1 FROM THE ORDER OF MAGISTRATE-JUDGE KOBAYASHI DENYING PLAINTIFF'S MOTION RE USE OF DEFENSE EXPERT'S TESTIMONY ON INFORMED CONSENT