EDMUNDS & VERGA
Attorneys at Law, A Law Corporation

JOHN S. EDMUNDS        734-0
jedmunds@ev-law.com
RONALD J. VERGA        2638-0
rjverga@ev-law.com
JOY S. OMONAKA        5709-0
jomonaka@ev-law.com
841 Bishop Street, Suite 2104
Honolulu, Hawai`i 96813
Telephone: (808) 524-2000

Attorneys for Plaintiff
DAWN COOPER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAWN COOPER, ) | CIVIL NO. 03-00595 SPK/LEK |
| ) | |
| Plaintiff, ) | PLAINTIFF'S PRETRIAL |
| ) | STATEMENT; AND CERTIFICATE |
| vs. ) | OF SERVICE |
| ) | |
| KEVIN W. DIEFFENBACH, M.D. and ) | |
| DOES 1-10, ) | |
| ) | |
| Defendants. ) | TRIAL: March 13, 2007 |
| ) | |

PLAINTIFF'S PRETRIAL STATEMENT

DAWN COOPER, plaintiff in the above matter, hereby submits the following as her pretrial statement, pursuant to Rule 16.6 of the Local Rules of the United States District Court for the District of Hawai`i.

C:\Data\CLIENTS\Cooper\080.wpd

**(a) Party**.  This pretrial statement is submitted on behalf of plaintiff Dawn Cooper ("Ms. Cooper").

**(b) Jurisdiction and Venue.**  Ms. Cooper is a resident and citizen of the State of Washington, and brings this cause of action against defendant Kevin W. Dieffenbach, M.D. ("Dr. Dieffenbach" or "Defendant"), a resident and citizen of the State of Hawaii.  The amount in controversy herein, exclusive of costs and interest, exceeds Seventy-Five Thousand Dollars ($75,000) and original jurisdiction exists in the United States District Court for the District of Hawai`i under 28 U.S.C. §1332 based on diversity of citizenship.  Venue is proper pursuant to 28 U.S.C. §1391.

**(c) Substance of Action.**   Ms. Cooper's claims arise from a medical, non-cosmetic surgical breast reduction procedure performed on her by Dr. Dieffenbach on July 16, 2001.

In June 2001, Ms. Cooper consulted with plastic surgeons at the Tripler Army Medical Center ("Tripler") concerning her need for breast reduction surgery.  At that time, she had very large breasts and suffered from the physical pain and emotional distress which is typical of the syndrome of having very large breasts.  These conditions had reached a point where there was a significant non-cosmetic medical basis for breast reduction surgery.  The Tripler physicians

decided that breast reduction surgery was indicated but could not be done at Tripler. They referred Ms. Cooper to Dr. Dieffenbach.

Ms. Cooper first consulted Dr. Dieffenbach on or about June 19, 2001. Based on advice from and representations by Dr. Dieffenbach, including specifically the representation that Dr. Dieffenbach was competent to perform the surgery he was recommending, Ms. Cooper agreed to undergo the surgery recommended by Dr. Dieffenbach which he advised her would reduce the size of her breasts from a "G" cup to a "DD" cup.

Dr. Dieffenbach did not inform Ms. Cooper that her weight and history of smoking were important risk factors in her case.

On or about July 16, 2001, at St. Francis Medical Center – West in Ewa Beach, Hawai`i ("St. Francis"), Dr. Dieffenbach performed a bilateral breast reduction procedure on Ms. Cooper (hereinafter "the surgery"). During the surgery, Dr. Dieffenbach removed approximately 820 grams of tissue from each breast.

After the surgery, Ms. Cooper consulted with Dr. Dieffenbach for post-surgical care and complained of persistent pain, swelling and the appearance of blisters over her breast and nipple areas. During these consultations, Dr. Dieffenbach failed to discover and treat Ms. Cooper for cellulitis in both breasts

and scabs on her nipples and other areas of her breasts which were necrotic breast tissue. Due to Dr. Dieffenbach's unavailability, Ms. Cooper sought post-operative medical treatment from the Schofield Clinic and Tripler.

Post-operatively, Ms. Cooper's breasts became increasingly blistered, scabbed and oozing green and yellow fluids. She was admitted to Tripler on August 20, 2001 due to the progressing fat necrosis and cellulitis. During her eighteen-day hospitalization, she endured continuous non-surgical debridement of necrotic breast tissue by wound vac application with continuous wet-dry dressings. When the non-surgical debridement failed to remove all of the necrotic breast tissue, a surgical debridement was performed, wherein all necrotic breast tissue was removed and Ms. Cooper was discharged from Tripler a week later.

Following her discharge, Ms. Cooper underwent skin graft surgery on October 11, 2001 in an attempt to replace the breast tissue lost to cellulitis and fat necrosis. However, due to the severe deformity of her breasts, Ms. Cooper had her nipples removed on March 7, 2002. Since that time, Ms. Cooper has not had any further reconstructive surgery performed on her breasts, however, she continued to receive psychological treatment up to the time she left Hawaii in May, 2002.

**(d) Undisputed Facts.**

The following facts are not reasonably in dispute:

1. At all pertinent times,

    a. Dr. Dieffenbach was a resident of the City and County of Honolulu, State of Hawaii;

    b. Dr. Dieffenbach was a physician duly licensed to practice medicine in the State of Hawaii;

    c. Dr. Dieffenbach was a health care provider as defined by Hawaii Revised Statutes Section 671-1;

    d. Dr. Dieffenbach held himself out to be competent to perform the breast reduction surgery that he performed on Ms. Cooper;

2. All of the care and treatment Dr. Dieffenbach provided to Ms. Cooper occurred on the island of Oahu, State of Hawaii.

3. Ms. Cooper was referred to Dr. Dieffenbach by Tripler.

4. At the time Dr. Dieffenbach saw Ms. Cooper on or about June 19, 2001, she had large breasts, which she reported to him caused physical pain and emotional distress and that such symptoms provided, in part, for a finding of a non-cosmetic medical basis for the breast reduction surgery that Dr. Dieffenbach performed on Ms. Cooper in July 2001.

5. On or about July 16, 2001, at St. Francis Medical Center - West in Ewa Beach, Dr. Dieffenbach performed a bilateral breast reduction procedure on Ms. Cooper removing approximately 820 grams of breast tissue.

6. On or about July 17, 2001, Ms. Cooper was discharged from St. Francis, the day after the surgery and she consulted with Dr. Dieffenbach through on or about August 10, 2001.

7. The care and treatment that Ms. Cooper received from Dr. Crabtree subsequent to leaving Dr. Dieffenbach's care in

August 2001, did not constitute superseding causes of her injuries and damages and does not break the chain of causation.

**(e) Disputed Factual Issues.**

All facts not set forth in Part (d) preceding are in dispute. The disputed issues include:

1. At the time Dr. Dieffenbach and/or his agents advised Ms. Cooper of the risks of the surgery and post-surgical care and treatment, Dr. Dieffenbach did not inform and/or warn Ms. Cooper of the kinds of consequences, and/or the degree of severity and the pain and life-long disfigurement which directly and proximately could and did result in this case.

2. Ms. Cooper's weight was an important risk factor for the surgery.

3. Ms. Cooper's history of smoking was an important risk factor for the surgery.

4. If Ms. Cooper had been so warned and informed, she would not have consented to the surgery.

**(f) Relief Prayed.** Ms. Cooper seeks a judgment against Dr. Dieffenbach for damages she has incurred stemming from the surgery. Such damages include (a) special damages, including, but not limited to, health care and other related medical expenses incurred to the date of trial, in addition to future health care expenses; (b) general damages, including, but not limited to, damages for pain and suffering, emotional distress, loss of enjoyment of life, permanent

disfigurement and scarring; (c) litigation costs and attorneys fees; and (d) such other relief as the Court deems just and proper.

**(g) Points of Law.**

1.  Under Hawai'i law, the following information shall be supplied to the patient prior to obtaining consent to a proposed medical or surgical treatment or a diagnostic or therapeutic procedure:

    (1) The condition to be treated;

    (2) A description of the proposed treatment or procedure;

    (3) The intended and anticipated results of the proposed treatment or procedure;

    (4) The recognized alternative treatments or procedures, including the option of not providing these treatments or procedures;

    (5) The recognized material risks of serious complications or mortality associated with:

        (A) The proposed treatment or procedure;

        (B) The recognized alternative treatments or procedures; and

        (C) Not undergoing any treatment or procedure; and

    (6) The recognized benefits of the recognized alternative treatments or procedures.

Hawaii Revised Statutes, Section 671-3.

  2. To establish a claim of negligent failure to obtain informed consent under Hawai`i law, the plaintiff must demonstrate that: (1) the physician owed a duty to disclose the risk of one or more of the collateral injuries that the patient suffered; (2) the physician breached that duty; (3) the patient suffered injury; (4) the physician's breach of duty was a cause of the patient's injury in that (a) the physician's treatment was a substantial factor in bringing about the patient's injury and (b) a reasonable person in the plaintiff patient's position would not have consented to the treatment that led to the injuries had the plaintiff patient been properly informed; and (5) no other cause is a superseding cause of the patient's injury.  <u>Bernard v. Char</u>, 79 Hawai`i 362, 365, 903 P.2d 667, (1995).

  3. In order to determine whether a physician owes a duty to disclose a particular piece of information to the patient, the Hawaii court expressly adopted the patient oriented standard.  <u>Carr v. Strode</u>, 79 Hawai`i 475, 485, 904 P.2d 489, (1995).  The patient oriented standard requires a physician to disclose "what a reasonable patient needs to hear from his or her physician in order to make an informed and intelligent decision regarding treatment."  <u>Id.</u>, 79 Hawai`i at 484.

  4. Under the patient oriented standard, expert testimony is not required to demonstrate the prevailing standard of disclosure in the medical community for a particular medical procedure or treatment.  <u>Id.</u>, 79 Hawai'i at 486.

5.      In proving the element of duty for informed consent purposes, a patient is not required to produce any expert medical testimony regarding what other reasonable physicians would have disclosed under the same or similar circumstances.  Barcai v. Betwee, 98 Hawai'i 470, 484, 50 P.3d 946 (2002).

6.      Expert testimony will ordinarily be required to establish the materiality of the risks, i.e., the nature of risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, and the nature of available alternatives to treatment."  Carr, supra, 79 Hawai'i at 486.

7.      Plaintiff need not necessarily provide such expert testimony; the requisite foundation can be established by the defendant-physician's expert medical testimony.  Id., at 487.

**(h) Previous Motions.**

1. Plaintiff's Motion For Leave to File First Amended Complaint filed on September 9, 2005 was vacated and terminated.  See Stipulation and Order re First Amended Complaint filed on October 17, 2005;

2. Plaintiff's Motion Re Use of Defense Expert's Testimony On Informed Consent filed on July 12, 2006 was denied.  See Order Denying Plaintiff's Motion Re Use of Defense Expert's Testimony On Informed Consent entered on October 10, 2006.

3. Plaintiff's Notice of Appeal to the District Court Pursuant to L.R. Rule 74.1 From the Order of Magistrate-Judge Kobayashi

>Denying Plaintiff's Motion Re Use of Defense Expert's Testimony On Informed Consent filed on October 27, 2006 was denied. <u>See</u> Order Affirming Order Denying Plaintiff's Motion Re Use of Defense Expert's Testimony On Informed Consent entered on January 3, 2007.

**(i) Witnesses to be called.**

<u>Lay Witnesses</u>:

Ms. Cooper intends to call the following witnesses at trial:

1. Dawn Cooper. Ms. Cooper will testify as to liability and damages.

2. Kevin W. Dieffenbach, M.D. Dr. Dieffenbach will testify as to liability and damages.

3. Thomas Crabtree, M.D. Dr. Crabtree will testify as to Ms. Cooper's medical condition following the surgery and the treatment rendered to her at Tripler, in addition to other aspects of liability and damages.

4. Joshua M. Cooper. Mr. Cooper was Ms. Cooper's husband at all relevant times herein. Their divorce is being finalized at this time. Mr. Cooper will testify as to liability and damages.

5. Christine Grimm. Ms. Grimm is Ms. Cooper's mother. She will testify as to liability and damages.

6. Misty Wolf. Ms. Wolf is Ms. Cooper's friend and she will testify as to liability and damages.

7. Ms. Cooper's healthcare providers will testify as to her care and treatment following the surgery, including testimony on liability and damages. These healthcare providers, include, but are not limited to, her physicians, surgeons, psychiatrists, psychologists, nurses, and other health care providers who are

employees and or agents of Dr. Dieffenbach, Tripler, St. Francis, and Schofield Clinic.

8. Ms. Cooper also reserves the right to call non-expert witnesses listed by Defendant in his initial and expert witness disclosures and his pretrial statements, including any supplements and/or amendments thereto.

9. Ms. Cooper reserves the right to call additional witnesses who have personal knowledge concerning factual issues raised herein and who are identified during further investigation and discovery.

10. Ms. Cooper reserves the right to call additional non-expert witnesses as may be necessary or appropriate for impeachment or rebuttal.

Expert Witnesses:

1. Kevin W. Dieffenbach, M.D. Dr. Dieffenbach will testify as to liability and damages, including, but not limited to, opinions regarding of informed consent.

2. Ms. Cooper also reserves the right to call expert witnesses listed by Defendant in his initial and expert witness disclosures and his pretrial statements, including any supplements and/or amendments thereto.

3. Ms. Cooper reserves the right to call an additional expert witness as agreed to by the parties herein and who is identified during further investigation and discovery.

4. Ms. Cooper reserves the right to call additional expert witnesses as may be necessary or appropriate for impeachment or rebuttal.

**(j) Exhibits, Schedules, and Summaries.**

1. All of Ms. Cooper's medical records.

2. The transcripts of the deposition of Dr. Dieffenbach taken on October 12, 2004 and October 28, 2004.

3. Post-surgery photographs.

4. Ms. Cooper incorporates by reference all documents produced by defendant in discovery herein and any exhibits listed by Defendant in his pretrial statement, including any supplements and/or amendments thereto.

5. Ms. Cooper reserves the right to identify additional exhibits obtained through further discovery.

6. Ms. Cooper also reserves the right to identify and use such additional exhibits as may be necessary or appropriate for impeachment or rebuttal.

**(k) Further Discovery Motions.**  At this time, Plaintiff anticipates no further discovery motions.

**(l) Stipulations.**  The parties stipulated to extensions of various discovery and filing deadlines.  The parties stipulated to the dismissal of all claims against Third-Party Defendant United States of America on April 26, 2005.  Counsel for Ms. Cooper is also willing enter into appropriate stipulations with counsel for Defendant to facilitate trial proceedings.

**(m) Amendments, Dismissals.** On October 6, 2003, Defendant filed a Third-Party complaint against Thomas Crabtree, M.D. in the Circuit Court of the First Circuit, State of Hawaii ("State Court"). On October 10, 2003, Defendant filed his First Amended Answer To Complaint in State Court. On that same day, Defendant filed his First Amended Third-Party Complaint.

On October 30, 2003, Third-Party Defendant Dr. Crabtree filed a Notice of Removal in this Court, along with a Notice of Substitution Of United States as Defendant, while simultaneously filing a Notice of Filing of Notice of Removal of Civil Action in State Court.

On April 26, 2005, Defendant agreed to dismiss Third-Party Defendant United States of America on April 26, 2005. On October 18, 2005, Plaintiff filed her First Amended Complaint.

**(n) Settlement Discussion.** The parties participated in their first settlement conference on June 8, 2005. The parties participated in their second settlement conference on February 22, 2006. Currently, no further attempts at settlement have been initiated.

**(o) Agreed Statement.** Ms. Cooper does not believe that a presentation of this action, in whole or in part, upon an agreed statement of facts is feasible or desired.

**(p) Bifurcation, Separate Trial of Issues.** Bifurcation or a separate trial of specific issues has not been raised by either party.

**(q) Reference to Master or Magistrate Judge.** There has been no reference to a master or Magistrate Judge for any matter other than procedural issues and discovery handled by the Magistrate Judge in the normal course of the proceedings.

**(r) Appointment and Limitation of Experts.** With the exception of plaintiff's inability to use Dr. Parsa's deposition testimony, there has been no limitation, to date, of any experts.

**(s) Trial.** Trial is scheduled to begin March 13, 2007 before the Honorable Samuel P. King. A jury trial has been timely demanded.

**(t) Estimate of trial time.** Ms. Cooper presently estimates that her case will take approximately two to three trial days, including time for cross-examination.

**(u) Claims of privilege or work product.** Other than the issue of Dr. Parsa's opinions, which has now been resolved, Plaintiff believes there will be no other claims of privilege or work product.

**(v) Miscellaneous.** Ms. Cooper has no other matter to bring to the Court's attention at this time.

DATED:  Honolulu, Hawai`i, January 23, 2007.

<u>/s/   Joy S.  Omonaka</u>
JOHN S. EDMUNDS
RONALD J. VERGA
JOY S. OMONAKA

Attorneys for Plaintiff
DAWN COOPER

---

<u>Cooper v.  Dieffenbach, et al.</u>
Civil No.  03-00595 SPK/LEK

PLAINTIFF'S PRETRIAL STATEMENT

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was duly served on the following parties at their last known address as set forth below, on January 23, 2007:

|  MAILED  | HAND DELIVERED |  |
|---|---|---|
| [    ] | [    ] | JEFFREY S. PORTNOY, ESQ.<br>CHRISTIAN K. ADAMS, ESQ.<br>Cades Schutte<br>1000 Bishop Street, Suite 1200<br>Honolulu, HI 96813<br><br>Attorneys for Defendant<br>KEVIN W. DIEFFENBACH, M.D. |

DATED:  Honolulu, Hawai`i, January 23, 2007.

/s/   Joy S.  Omonaka
JOHN S. EDMUNDS
RONALD J. VERGA
JOY S. OMONAKA

Attorneys for Plaintiff
DAWN COOPER

C:\Data\CLIENTS\Cooper\080.wpd