COPYING PROHIBITED HRS 606-13/HRCP RULE 30(f)(2)

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF HAWAII

 3                         ---:---

 4   DAWN COOPER,              )   CIVIL NO. 03-00595 SPK/LEK
                               )
 5                             )
                Plaintiff,     )
 6                             )
            vs.                )
 7                             )
     KEVIN W. DIEFFENBACH, M.D.)
 8   and DOES 1-10,            )
                               )
 9              Defendants.    )
                               )
10   _____)
                               )
11   KEVIN W. DIEFFENBACH, M.D.,)
                               )
12        Third-Party Plaintiff,)
                               )
13          vs.                )
                               )
14   UNITED STATES OF AMERICA and)
     DOE DEFENDANTS 1-10,      )
15                             )
          Third-Party Defendants.)
16   _____)

17

18

19                         VOLUME I

20       DEPOSITION OF KEVIN W. DIEFFENBACH, M.D.

21   Taken on behalf of the Plaintiff, at the Law Offices of

22   Edmunds & Verga, 841 Bishop Street, Suite 2104,

23   Honolulu, Hawaii, commencing at 9:32 a.m., on Tuesday,

24   October 12, 2004, pursuant to Notice.

25   BEFORE:       Cassie Uyekubo, CSR 293
                   Notary Public, State of Hawaii
```

```
 1            I am assuming -- and want to be clear -- that what
 2   you meant by that was that if she were to try losing
 3   weight and were able to lose enough weight, that weight
 4   would come, in part, off of her breasts, thereby
 5   reducing the weight of her breasts; do I have that
 6   right?
 7   A     It could, in part, reduce the size of her breasts.
 8   Q     Is there any other reason why you would recommend
 9   someone lose weight in lieu of, or in the alternative
10   to, performing the surgery?
11   A     Yes.  Obesity is, in and of itself, a risk factor
12   for any surgical procedure.
13   Q     Did you recommend she lose some weight before you
14   did the surgery?
15   A     She stated to me that although she had desire to
16   lose more weight, that her weight loss had plateaued,
17   and because of her back pain and difficulty exercising,
18   she did not feel that she could lose additional weight.
19   Q     How much weight did she tell you she had lost?
20   A     Roughly a hundred pounds.
21   Q     So, that weight at which you saw her was a hundred
22   pounds less than where she had been?
23   A     Roughly.
24   Q     Did she tell you whether she obtained any pain
25   relief from the problems associated with her breasts as
```

```
 1    a result of that hundred-pound weight loss?
 2    A     I don't specifically recall.
 3    Q     Now, did she give you a history of being a smoker?
 4    A     Yes, she did.
 5    Q     And that is a significant history in a candidate
 6    for this kind of surgery, is it not?
 7    A     It is relevant, yes.
 8    Q     And why is that?
 9    A     Because --
10    Q     -- Generally.
11    A     Generally, smoking increases risk of virtually any
12    surgery.
13    Q     And the general nature of the increased risk for
14    this type of surgery is that the smoking causes
15    constriction of the blood vessels, correct?
16    A     That's certainly one factor.
17    Q     And as a result of the constriction of the blood
18    vessels, for example, if someone is smoking right up to
19    the time of the surgery and resumes smoking right
20    after -- I understand that you would advise against
21    that, but assuming someone is doing that, the
22    constriction of the blood vessels can inhibit the blood
23    flow and the healing process; is that correct?
24    A     Correct.
25    Q     Are there any other concepts that are at work
```

1  here, or have I stated it generally?
2  A    I think it's still being determined what other
3  effect smoking has.  And new things are always coming
4  out.  But I suppose in addition to the effects on blood
5  vessels, in particular, just the effects on wound
6  healing, in general -- and again, the mechanisms are not
7  necessarily clear -- are interfered with history of
8  smoking.
9  Q    So in addition to the vessel constriction which
10 results from someone smoking tobacco or cigarettes, your
11 understanding is that there is, in addition, an
12 interference with wound healing by virtue of someone
13 being a smoker?
14 A    Or a history of smoking.
15 Q    Over and above the vessel constriction dynamic; is
16 that correct?
17 A    Again, the exact mechanisms are not necessarily
18 clear.
19 Q    I understand.  That is an example of me talking
20 over you and interrupting, and I didn't mean to.  That's
21 the kind of thing we want to try to avoid.
22      Now, what did you tell Dawn about smoking?
23 A    I told her that we appreciate her being honest and
24 forthright about her smoking history; and that while her
25 smoking history -- excuse me -- she stated that she quit

```
 1   Q    Did you explain to her why she should not smoke,
 2   or was it something you just told her, generally, she
 3   should not do?
 4   A    When we got onto the informed consent, the issue
 5   of smoking came up again, and --
 6   Q    Let me withdraw the question, because I asked you
 7   an imprecise question.
 8   A    Yes.
 9   Q    At the first office visit, as distinguished from
10   going over the informed consent forms prior to
11   surgery -- we're talking about two different days,
12   correct?
13   A    Okay.
14   Q    And I'm not at all quarreling with what you
15   discussed with her about smoking during the informed
16   consent review, and we'll get to that.
17   A    Okay.
18   Q    But on the occasion of the first office visit
19   where she had answered no on the form, and then
20   corrected it under questioning to say, hadn't smoked for
21   three months, and then prior to that was smoking a half
22   pack per day -- during that office visit, do you recall
23   saying anything to her about smoking or not smoking?
24   A    Yes.  When the issue comes up, I always say that
25   that's an important aspect of surgical treatment, and
```

```
 1  that it's very important that she refrain from smoking.
 2  Q    Now, at that time, do you recall whether you said
 3  anything more than that?  That is, to give her the
 4  reasons why, or did you just state the conclusion?
 5  A    I don't recall specifically.
 6  Q    What was your general practice at the time, in a
 7  first office visit such as this -- just to state the
 8  conclusion?
 9  A    I'm not really sure I understand.  The question
10  seems kind of vague.
11  Q    You can't recall whether you simply stated for her
12  the conclusion, you shouldn't smoke when you do this
13  surgery, or told her more than that, correct?
14  A    I generally, in general terms, will say that it
15  has a negative impact on wound healing and blood supply,
16  as we discussed.
17  Q    So, that was your practice, at the time?
18  A    Yes.
19  Q    Did she seem to understand that when you told her
20  that?
21  A    Yes.
22  Q    And did she tell you she would not smoke prior to
23  the surgery?
24  A    I -- I don't specifically recall, but I believe
25  she did.
```

```
1    STATE OF HAWAII              )
2                                 )SS.
                                  )
3

4

5        I, CASSIE UYEKUBO, C.S.R., a Notary Public in and
     for the State of Hawaii, do hereby certify:
6

7        That on OCTOBER 12, 2004, appeared before me KEVIN
     W. DIEFFENBACH, M.D., the witness whose testimony is
8    contained herein, that prior to being examined, the
     witness was by me duly sworn or affirmed; that the
9    proceedings were taken in computerized machine shorthand
     by me and were thereafter reduced to print under my
10   supervision; that the foregoing represents, to the best
     of my ability, a correct transcript of the proceedings
11   had in the foregoing matter;

12
         That the witness, if applicable, was notified
13   through counsel, by mail or by telephone to appear and
     sign; that if the transcript is not signed, either the
14   reading and signing were waived by the witness and all
     parties, or the witness has failed to appear and the
15   original is therefore kept on file without signature
     pursuant to Court rules.
16

17       I further certify that I am not counsel for any of
     the parties hereto, nor in any way interested in the
18   outcome of the cause named in the caption.

19

20                          OCT 18 2004
21       Dated: _____

22
                 _____
23               Cassie Uyekubo, C.S.R. #293
                 Notary Public, State of Hawaii
24               My Commission Expires: November 8, 2005

25
```