IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAWN COOPER, | ) | CIVIL NO. 03-00595 SPK/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KEVIN W. DIEFFENBACH, M.D. and DOES 1-10, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

ORDER GRANTING DEFENDANT KEVIN W. DIEFFENBACH'S
MOTION FOR SUMMARY JUDGMENT

Defendant Kevin W. Dieffenbach moves for Summary Judgment on the remaining claims in this action brought by Plaintiff Dawn Cooper. The matter was argued on August 16, 2007. John Edmunds appeared for Plaintiff; Jeffrey Portnoy and Christian Adams appeared for Defendant. For the reasons set forth, the motion is GRANTED.

I.

The remaining claim in this medical malpractice case is informed consent. (Plaintiff's complaint asserted other medical malpractice negligence theories, but Plaintiff withdrew those claims after withdrawing her expert witness, apparently because he was unable to opine on the relevant issues.) Plaintiff's theory is based

upon improper or insufficient informed consent regarding the risks her smoking and weight could have had on her medical procedure.

Some procedural background is relevant.  On October 10, 2006, U. S. Magistrate Judge Leslie Kobayashi denied Plaintiff Dawn Cooper's Motion to Use Defense Expert's Testimony on Informed Consent.  Plaintiff had not proffered an expert witness to opine that Defendant had breached a standard of care regarding informed consent.  However, during his deposition, Dr. Parsa, Defendant's proposed trial expert (at the time) had testified regarding informed consent.  Because Plaintiff did not have, or had withdrawn, an expert, Defendant withdrew Dr. Parsa (who had apparently been proffered as a rebuttal expert.)  Plaintiff sought to use Dr. Parsa's testimony for her case-in-chief, either by calling him directly or by submitting his deposition testimony.  By the order of October 10, 2006, Judge Kobayashi determined that Plaintiff could not use Dr. Parsa's testimony because he had become a non-testifying expert within the meaning of Fed. R. Civ. P. 26(b)(4)(B) and that Plaintiff had not established the "exceptional circumstances" necessary to use Dr. Parsa's testimony.  Plaintiff appealed Judge Kobayashi's ruling; this Court agreed with her ruling and affirmed on January 3, 2007.

Defendant now moves for summary judgment, arguing that because Plaintiff has no expert testimony she cannot establish a claim for negligent failure to obtain

informed consent.

## II.

Under Hawaii law, negligence in medical malpractice actions must generally be decided by reference to relevant medical standards of care which the plaintiff must prove through expert medical testimony. Craft v. Peebles, 893 P.2d 138, 149 (Haw.1995) (citing Nishi v. Hartwell, 473 P.2d 116, 121 (Haw. 1970) (further citations omitted); Carr v. Strode, 904 P.2d 489 (Haw. 1995) (same). This standard of care "must be established by expert testimony because 'a jury generally lacks the 'requisite special knowledge, technical training, and background to be able to determine the applicable standard without the assistance of an expert.'" Craft, 893 P.2d at 149 (quoting Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371, 374 (1985) (citations omitted)).

Hawaii has adopted a "patient oriented" standard governing the duty to disclose information. Carr, 904 P.2d at 498. The standard is "what a reasonable patient needs to hear from his or her physician in order to make an informed and intelligent decision regarding treatment or surgery." Id. Expert testimony is not needed to establish what a reasonable patient needs to hear. However, expert testimony is necessary to establish the "materiality" of risk information a physician must disclose prior to treatment. Id. at 500. In particular, expert testimony must

be adduced regarding:

    (1) "the nature of risks inherent in a particular treatment,"

    (2) "the probabilities of therapeutic success,"

    (3) "the frequency of the occurrence of particular risks," and

    (4) "the nature of available alternatives to treatment."

Id.

    Plaintiff does not dispute that expert testimony is required. Plaintiff agrees for the current motion that she is unable to utilize testimony of Dr. Parsa. However, she argues that she can meet her burden at summary judgment by utilizing the deposition testimony of the Defendant himself, Dr. Dieffenbach. She proffers Dr. Deiffenbach's deposition. She also points to her own (lay) testimony regarding what she was told, e.g., whether or not she was fully informed of the risk of necrosis (dead tissue) as it related to her weight and smoking history.

    Hawaii law indeed allows the necessary expert testimony on materiality to be established by the Defendant's own testimony. See Carr, 904 P.2d at 501 ("It is clear that a defendant-physician's testimony may satisfy this burden") (citing Nishi, 473 P.2d at 121). The question, therefore, is whether Dr. Dieffenbach's deposition testimony is sufficient to create a question of fact for a fact-finder on the "materiality" of the risk of information given, or not given, to Plaintiff.

Plaintiff points to the following:

Q. [Plaintiff's counsel]: Is there any other reason why you would recommend someone lose weight in lieu of, or in the alternative to, performing the surgery?

A. [Dr. Dieffenbach]: Yes. Obesity is, in and of itself, a risk factor for any surgical procedure.

[October 1, 2004, Deposition of Dr. Dieffenbach, at 19].

Q. Now, are the complications which you've just listed, complications which can result specifically from interruption of the blood supply to the breast? . . . . [F]rom the ones that you've just listed, are each and every one of them, complications which can result from some degree of interruption of the blood supply to a patient's breast or breasts?

A. I suppose, directly or indirectly, yes.

Q. You would agree that because Ms. Cooper was -- strike that. Because Ms. Cooper had the history of obesity and weight fluctuation, that she was at greater risk for post-surgical complications in the surgery you performed than a patient would have been, who didn't have that history?

A. Yes.

[October 28, 2004, Deposition, at 108].

Q. Now, did she give you a history of being a smoker?

A. Yes, she did.

Q. And that is a significant history in a candidate for this kind of surgery, is it not?

A. It is relevant, yes.

Q. And why is that?

>. . . .
> A.  Generally, smoking increases risk of virtually any surgery.
>
> Q.  And the general nature of the increased risk for this type of surgery is that the smoking causes constriction of the blood vessels, correct?
>
> A.  That's certainly one factor.
>
> Q.  And. . . if someone is smoking right up to the time of the surgery and resumes smoking right after. . . the constriction of the blood vessels can inhibit the blood flow and the healing process; is that correct?
>
> A.  Correct.
> . . . .

[October 1, 2004, Deposition at 20-21].

> Q.  Did you tell [Plaintiff] that because of her history of obesity and weight fluctuation, that she was at greater risk for post-surgical complications of any sort than someone who had not had that history?
>
> A.  I don't specifically recall.

[October 28, 2004, Deposition at 109]

> Q. But on the occasion of the first office visit. . . do you recall saying anything to her about smoking or not smoking?
>
> A.  Yes.  When the issue comes up, I always say that that's an important aspect of surgical treatment, and that it's very important that she refrain from smoking.
>
> Q.  Now, at that time, do you recall whether you said anything more than that?  That is, to give her the reasons why, or did you just state the conclusion?
>
> A.  I don't recall specifically.

[October 1, 2004, Deposition at 23-23].

The proffered excerpts might be enough to establish the first part of the "materiality" test -- "the nature of risks inherent in a particular treatment" -- set forth in Carr. But there is nothing in those excerpts of Dr. Deiffenbach's testimony (and nothing else in the other portions the Court has been provided) regarding the other three parts of the "materiality" inquiry: "the probabilities of therapeutic success," "the frequency of the occurrence of particular risks," and "the nature of available alternatives to treatment." Carr, 904 P.2d at. 500.

Without expert testimony, Plaintiff can't establish her case. From the Court's careful review of Dr. Dieffenbach's testimony, such testimony is also insufficient to meet her burden at summary judgment. Evidence is lacking as to the necessary elements of "materiality" as required by Hawaii law. Because Plaintiff has failed to meet her burden to create a genuine issue of material fact for trial, Defendant's motion for summary judgment is GRANTED. Judgment shall issue in favor of Defendant.

    IT IS SO ORDERED.

    DATED: August 20, 2007

    Samuel P. King
    Senior United States District Judge